UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
INTERACTIVE BROKERS LLC

              Plaintiff,

        - against –

JACK DELAPORTE, DILLON
SPRINGER, HELENA YOST, JASON
MERRITT, JEFFREY ROSENTHAL,
LISA ROSENTHAL, BRETT LEVE,
DAVID SIMKINS, individually and
as trustee of the DAVID SIMKINS
GRANTOR TRUST and the LEON
SIMKINS NON-EXEMPT TRUST FBO
DAVID SIMKINS, BRUCE CLAY,
MATTHEW CLAY, MICHELLE SIMKINS
RUBELL, individually and as
trustee of the MICHELLE SIMKINS
RUBELL GRANTOR TRUST, TAYLOR
SIMKINS, DRAMM, INC., and JODY
LEVY,

             Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

23 Civ. 5555 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    On June 28, 2023, plaintiff Interactive Brokers LLC ("IBKR") filed this action against defendants Jack Delaporte, Dillon Springer, Helena Yost, Jason Merritt, Jeffrey Rosenthal, Lisa Rosenthal, Brett Leve, David Simkins, individually and as trustee of the David Simkins Grantor Trust and the Leon Simkins Non-Exempt Trust FBO David Simkins, Bruce Clay, Matthew Clay, Michelle Simkins Rubell, individually and as trustee of the Michelle Simkins Rubell Grantor Trust, Taylor Simkins, Dramm, Inc., and Jody Levy

(hereafter, collectively "defendants"), seeking to permanently enjoin defendants from proceeding with an arbitration they had commenced against plaintiff before the Financial Industry Regulatory Authority ("FINRA") (<u>Jack Delaporte, Dillon Springer, Helena Yost, Jason Merritt, Jeffrey Rosenthal, et al. vs. Interactive Brokers LLC</u>, FINRA Case No. 23-01592, or the "Arbitration"). Concurrently with the filing of the complaint, plaintiff moved for a preliminary injunction enjoining the arbitration. The parties agreed to stay the arbitration until the earlier of ten days after this Court's ruling on plaintiff's motion or October 14, 2023. <u>See</u> ECF No. 12.

For the reasons stated below, the Court grants plaintiff's motion and, pursuant to Rule 65(a)(2), issues a preliminary injunction enjoining defendants from pursuing the Arbitration against plaintiff.

## BACKGROUND[1]

The Arbitration was filed on May 31, 2023 by defendants, who were investors in funds managed by EIA All Weather Alpha Fund I Partners, LLC ("EIA Partners"), against IBKR, an online broker

---

[1] The facts considered and recited here are drawn from the documentary evidence submitted by the parties in connection with this motion. <u>See</u> <u>Mullins v. City of New York</u>, 626 F. 3d 47, 52 (2d Cir. 2010) (holding that a court may rely on affidavits, depositions, sworn testimony, and hearsay evidence in considering a motion for a preliminary injunction).

that provides for "self-directed" trading.  See ECF No. 1 (the
"Complaint" or "Compl.") ¶¶ 2, 18, 20, 23; ECF No. 7-1 (the
"Statement of Claim"); Pl's Mem. of Law in Support ("Pl. Br.") at
2-3.  According to the Complaint, EIA Partners, a Delaware limited
liability company owned and managed by Andrew Middlebrooks, served
as the investment advisor and general partner of EIA Alpha Fund I,
LP,[2] a Delaware limited partnership and pooled investment vehicle,
and Middlebrooks was the sole member of EIA All Weather Alpha Fund
Partners II, LLC, a Delaware limited liability company
(collectively, "EIA").  Compl. ¶¶ 20, 21.

From approximately July 2017 until May 2022, EIA maintained
one or more trading accounts at IBKR.  Compl. ¶ 24.  On July 3,
2017, Middlebrooks signed the Interactive Brokers Institutional
Services Customer Agreement, which governed EIA's relationship
with IBKR "for Execution and/or Settlement and Carrying Services."
See ECF No. 14-2 ("EIA Agreement") at 1.  The EIA Agreement
included an arbitration provision, which stated in relevant part:

> Customer agrees that any controversy, dispute, claim, or
> grievance between IB, any IB affiliate or any of their
> shareholders, officers, directors[,] employees,
> associates, or agents, on the one hand, and Customer or,
> if applicable, Customer's shareholders, officers,
> directors[,] employees, associates, or agents on the

---

[2] The Statement of Claim refers to this limited partnership as the "EIA All
Weather Alpha Fund I, LP."  Statement of Claim at 5.

> other hand, arising out of, or relating to, this
> Agreement, or any account(s) established hereunder in
> which securities may be traded; any transactions
> therein; any transactions between IB and Customer; any
> provision of the Customer Agreement or any other
> agreement between IB and Customer; or any breach of such
> transactions or agreements, shall be resolved by
> arbitration . . .

EIA Agreement at 8.

Defendants allege in the Statement of Claim that they entrusted investment assets to EIA based on representations made by Middlebrooks and EIA emails, presentations, and fund documents. Compl. ¶ 25. According to the Statement of Claim, EIA misled investors, misappropriated defendants' investment assets, and made "Ponzi-like payments to investors." Statement of Claim at 15-28; Compl. ¶ 26. Defendants contend that IBKR failed to detect and prevent EIA's misconduct and seek to hold IBKR liable for damages allegedly suffered as a result of EIA and Middlebrooks' misconduct. Statement of Claim at 45-48. On approximately June 2, 2023, FINRA notified IBKR that it was named as a party in the arbitration and directed IBKR to respond to defendants' Statement of Claim by July 24, 2023. Compl. ¶ 19; Pl. Br. at 3.

Shortly thereafter, plaintiff initiated this litigation, seeking (1) a declaration that IBKR has no obligation to arbitrate this dispute, and (2) a permanent injunction to prevent defendants from arbitrating their claims against IBKR. Compl. ¶¶ 10, 40, 48.

-4-

IBKR also filed a motion for a preliminary injunction to enjoin the Arbitration pending the resolution of this lawsuit.  See ECF No. 5 (the "Motion"); Pl. Br.

On July 14, 2023, the parties agreed to stay the FINRA proceedings pending the earlier of the resolution of this motion or October 14, 2023.  See ECF No. 11.  On July 24, 2023, defendants filed their memorandum in opposition, see ECF No. 14 ("Defs. Opp."), and on August 4, 2023, plaintiff filed its reply memorandum, see ECF No. 15.

**DISCUSSION**

## I.  Legal Standard

In the Second Circuit, a party seeking a preliminary injunction must establish: "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest."  N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc., 883 F.3d 32, 37 (2d Cir. 2018).  Defendants do not contest that plaintiff would be irreparably harmed if they arbitrated the dispute, whether the balance of hardships favors the moving party, or whether the injunctive relief is in the public

interest.[3]   Thus, the only factor at issue is whether IBKR is likely to succeed on the merits of its claim, namely, foreclosing the arbitration.

## II.  Analysis

Defendants contend that plaintiff must arbitrate this dispute before FINRA for two primary reasons.  First, defendants argue that, although they did not sign the EIA Agreement that contains the arbitration clause at issue, they can compel arbitration as either third-party beneficiaries to the agreement or based on the theory of equitable estoppel.  Second, and in the alternative, defendants claim that this dispute should be arbitrated before FINRA pursuant to FINRA Rule 12200.  The Court will address each argument in turn.

### a. Defendants May Not Compel Arbitration Under Contract Principles

#### i. Legal Standard

The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA") governs the interpretation of arbitration clauses.  The FAA represents "a strong federal policy favoring arbitration,"

---

[3] Further, in the context of a motion to enjoin arbitration, "[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law."  UBS Sec., LLC v. Voegeli, 405 F.App'x 550, 552 (2d Cir. 2011) (citing Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003)).

Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001), and courts must "rigorously enforce agreements to arbitrate." Convergen Energy LLC v. Brooks, No. 20-CV-3746 (LJL), 2020 WL 4500184, at *7 (S.D.N.Y. Aug. 5, 2020) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985)).  If an "enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand," courts apply a "presumption of arbitrability." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 301-02 (2010).  However, this presumption "does not apply to disputes concerning whether an agreement to arbitrate has been made." Applied Energetics, Inc. v. NewOak Capital Mkts., LLC, 645 F.3d 522, 526 (2d Cir. 2011).  Further, it is well-settled that "arbitration is a matter of contract and therefore a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Ross v. Am. Exp. Co., 547 F.3d 137, 143 (2d Cir. 2008) (quotations and citation omitted); see also Holick v. Cellular Sales of New York, LLC, 802 F.3d 391, 395 (2d Cir. 2015) (stating that "arbitration is a matter of consent, not coercion.").

In certain circumstances, the FAA allows non-signatories to compel arbitration under "traditional principles of state law," such as under third-party beneficiary and estoppel theories.

_Arthur Andersen LLP v. Carlisle_, 556 U.S. 624, 631 (2009) (quotations omitted).  Under New York law, "[a] third-party beneficiary's right to compel arbitration depends on the contracting parties' intent," _Republic of Iraq v. ABB AG_, 769 F. Supp. 2d 605, 612 (S.D.N.Y. 2011), "as expressed by the plain language of the [arbitration] provision," _John Hancock Life Ins. Co. v. Wilson_, 254 F.3d 48, 58 (2d Cir. 2001).  "Parties can obviously intend for a third party to benefit from certain promises in a contract and not others." _Republic of Iraq_, 769 F. Supp. 2d at 612.  But "because 'the threshold for clarity of [an] agreement to arbitrate is greater than with respect to other contractual terms,' a court will not resort to 'construction or implication' to find that a contract invests a third-party with a right to compel arbitration." _Id._ (quoting _Waldron v. Goddess_, 61 N.Y.2d 181, 183, 185 (1984)).  As a result, a third-party can only compel a signatory to arbitrate a dispute if "the agreement . . . so provide[s] in express language." _Id._ (citation omitted).

Turning to a non-signatory's ability to compel arbitration under the doctrine of equitable estoppel, the Court must make a two-part inquiry.  First, "the relationship among the parties, the contracts they signed . . ., and the issues that had arisen" must reveal that the dispute the non-signatory seeks to compel is

-8-

"intertwined" with the agreement to arbitrate.   See Ragone v. Atlantic Video at Manhattan Ctr., 595 F.3d 115, 126–27 (2d Cir. 2010) (citing Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co., 271 F.3d 403, 406 (2d Cir. 2001)).   Second, there must be a relationship among the parties that justifies permitting a non-signatory to stand in for a signatory and compel arbitration under the agreement.   Id. at 127.

This inquiry assesses whether the arbitration agreement "can be reasonably seen" to extend to a non-signatory that "was, or would predictably become, with [the] knowledge and consent [of the party opposing arbitration], affiliated or associated with [the other signatory]."   Doe v. Trump Corp., 6 F.4th 400, 413 (2d Cir. 2021) (quoting Ross, 547 F.3d at 146).   The parties' relationship must either (1) illustrate that the signatory resisting arbitration effectively consented to extend its agreement to arbitrate to the non-signatory or (2) make "it inequitable for [the signatory] to refuse to arbitrate on the ground that it had made no agreement with [the non-signatory]."   Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 361 (2d Cir. 2008).   The Second Circuit has noted that estoppel cases "tend[] to share a common feature in that the non-signatory party asserting estoppel has had some sort of corporate relationship to a signatory party; that is,

[the Circuit] has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities." Meridian Autonomous Inc. v. Coast Autonomous LLC, No. 17-CV-5846 (VSB), 2020 WL 496078, at *3 (S.D.N.Y. Jan. 30, 2020) (quoting Ross, 547 F.3d at 144).

### b. Defendants Are Not Third-Party Beneficiaries to the EIA Agreement

As set out above, the arbitration provision in the EIA Agreement requires the arbitration of any dispute arising from the contract between IBKR and "Customer or, if applicable, Customer's shareholders, officers, directors[,] employees, associates, or agents . . . " EIA Agreement at 8. Defendants contend that they can compel arbitration under this provision as "shareholders" of a "Customer" (EIA) "by virtue of Defendants['] subscription agreements and transmittal of investment funds." Defs. Opp. at 6.

As an initial matter, it is undisputed that defendants here did not sign the EIA Agreement. EIA Agreement at 9. Further, the signatories to the EIA Agreement have not expressed a clear intent to confer a right to compel arbitration upon defendants as third-party beneficiaries. In the Statement of Claim, defendants identify themselves as "investors" in and "clients" of EIA, see, e.g., Statement of Claim at 10, 15, 28, but in their opposition brief, they state that they are limited partners of EIA, Defs.

-10-

Opp. at 10.  The plain language of the arbitration provision does not encompass any of these categories.  And, after reinventing themselves as limited partners, defendants make an unsupportable claim that, as limited partners, they are in fact shareholders of EIA.  Id. at 10-11.  To that end, defendants argue that there is no material distinction between shareholders and limited members of a partnership because "New York courts have noted that limited partners and shareholders are the equivalent nomenclature in their respective corporate forms."  Id. at 10.  However, this argument ignores New York corporate and partnership law, as "[l]imited partnerships and corporations are distinctly different organizational forms in the law of New York."  Nanjing Textiles IMP/EXP Corp. v. NCC Sportswear Corp., No. 06- CV-52 (JGK), 2006 WL 2337186, at *14 (S.D.N.Y. Aug. 11, 2006) (quoting People v. Zinke, 76 N.Y.2d 8, 14-15, (1990), where the court explained that "[l]imited partnerships are governed by the Partnership Law—as they have been since the inception of the Partnership Law—and corporations are governed by the Business Corporation Law, a fact that has pervasive legal and financial significance.").

Moreover, the cases relied on by defendants are inapposite. Two cases concern the ability of limited partners or limited liability company members to maintain derivative actions on behalf

of a partnership or limited liability company, <u>Klebanow v. N.Y.</u>
<u>Prod. Exch.</u>, 344 F.2d 294 (2d Cir. 1965); <u>Bischoff v. Boar's Head</u>
<u>Provisions Co.</u>, 436 F. Supp. 2d 626, 632 (S.D.N.Y. 2006), while a
third found that the citizenship of a real estate investment trust
should be determined based on the citizenship of its sole member.
<u>MSR Tr. v. Nationstar Mortg. LLC</u>, No. 21-CV-3089 (RWL), 2021 WL
4200720, at *6 (S.D.N.Y. Sept. 15, 2021).   These cases hardly
establish that defendants are identical to "shareholders" such
that IBKR and EIA intended them to be third-party beneficiaries.
At the very least, defendants' unsupportable interpretation of
"shareholder" does not meet the heightened "threshold for clarity"
required to find that a third-party has the right to compel
arbitration.  <u>Republic of Iraq</u>, 769 F. Supp. 2d at 612.

### c. Defendants Are Not Entitled to Arbitration Under the Theory of Equitable Estoppel

Defendants also contend that they can compel plaintiff to
arbitrate "under a theory of estoppel."  Defs. Br. at 8.  However,
defendants fail to address whether (1) their relationship with
plaintiff was sufficiently intertwined with the EIA Agreement or
(2) the relationship among defendants, plaintiff, and EIA
"justifies a conclusion that the party which agreed to arbitrate
with another entity should be estopped from denying an obligation
to arbitrate a similar dispute with the adversary which is not a

party to the arbitration agreement." <u>Ragone</u>, 595 F.3d at 127. Defendants similarly do not argue that they were "subsidiaries, affiliates, agents, employees or other related business entities of a signatory to the agreement to arbitrate." <u>Ross</u>, 547 F.3d at 144.

Further, defendants cite no authority that supports the proposition that a party to a bilateral contract can be compelled to arbitrate by a group of investors previously unknown to that party. One of the cases relied on by defendants, <u>Greene v. Kabbalah Center International, Inc.</u>, concerns signatory plaintiffs who compelled both signatory and non-signatory defendants to arbitrate because the non-signatory defendants "had total control" over and were "intimately involved in" the signatory defendant. 625 F. Supp. 3d 3, 20 (E.D.N.Y. 2022). Here, by contrast, not only are non-signatories attempting to compel the arbitration against a signatory, but there is no demonstration of control by non-signatories.

Defendants' reliance on <u>Mance v. Mercedes-Benz USA</u>, a decision from the Northern District of California, is similarly unhelpful. 901 F. Supp. 2d 1147 (N.D. Cal. 2012). There, the plaintiff signed a contract with a car dealership pursuant to the purchase of an automobile that included a warranty and an

arbitration clause.   Id. at 1152-53.   The plaintiff sued non-signatory Mercedes-Benz USA to recover under that warranty, and the court found that the defendant could compel arbitration under that agreement because (1) the plaintiff sought to hold the non-signatory liable pursuant to duties imposed by that contract while, on the other hand, denying the applicability of the arbitration provision based on the defendant's status as a non-party and (2) the conduct of the defendant was "substantially interdependent with the conduct of" the signatory car dealership.   Id. at 1156. Again, defendants in the instant case are not analogously situated. First, here the non-signatories initiated the underlying dispute before FINRA, unlike the signatory plaintiff in Mance.   Moreover, defendants' claims described in the Statement of Claim do not "arise out of" or "relate directly" to the EIA Agreement.   Id. (finding that plaintiff's breach of warranty claim was premised on and arose out of the contract containing the arbitration provision); see generally Statement of Claim; Defs. Opp.   And, defendants fail to describe any type of "substantial[] interdependen[ce]" between the relevant parties.   Mance, 901 F.Supp.2d at 1156; see generally Statement of Claim; Defs. Opp. Defendants thus fail to establish that they are entitled to arbitration under the theory of equitable estoppel.

### d. Defendants Are Not Entitled to Compel Arbitration Pursuant to The FINRA Code

#### i. Legal Standard

Alternatively, defendants argue that they have the right to compel arbitration under FINRA Rule 12200.  The Second Circuit has held that the "arbitration rules of an industry self-regulatory organization such as FINRA are interpreted like contract terms" and "should thus be interpreted to give effect to the parties' intent as expressed by the plain language of the provision." Citigroup Glob. Mkts. Inc. v. Abbar, 761 F.3d 268, 274 (2d Cir. 2014) ("Abbar") (internal quotations omitted); see also UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc., 660 F.3d 643, 649 (2d Cir. 2011) ("FINRA Rules must be interpreted in accordance with principles of contract interpretation").  Thus, the FINRA Code should generally "be construed in a manner consistent with the reasonable expectations of FINRA members." Abbar, 761 F.3d at 274-75.  However, unlike ordinary contract interpretation rules, the interpretation of the FINRA Code should resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration."  Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 171 (2d Cir. 2011) (citation omitted).

The FINRA Code requires parties to submit to FINRA arbitration of a dispute if:

- Arbitration under the [FINRA] Code is either:

    (1) Required by a written agreement, or

    (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Rule 12200 (emphasis added). The FINRA Code does not define "customer," other than excluding brokers or dealers. FINRA Rule 12100(k). However, the Second Circuit has established a "bright-line rule" in determining the meaning of the term "customer" for purposes of FINRA Rule 12200. Abbar, 761 F.3d at 274-77. A customer is defined as one "who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." Id. at 275. Meanwhile, an "associated person of a member" is defined by the FINRA Code as a "natural person who is registered or has applied for registration under the Rules of FINRA." FINRA Rule 12100(b) and 12100(w).

-16-

### ii. Application

Defendants claim that they are entitled to arbitrate this dispute under FINRA Rule 12200 because of the existence of "written agreement" requiring arbitration. Defs. Opp. at 6. Regardless of whether a valid written agreement provides defendants the right to compel arbitration, in order to satisfy prong two of Rule 12200, defendants must also establish that they were either customers of IBKR or customers of an associated person of IBKR. FINRA Rule 12200(ii). However, defendants do not contend that they are customers of IBKR or of a person associated with IBKR. In fact, defendants appear to disclaim that argument in their opposition brief. Defs. Opp. at 1 ("Plaintiff incorrectly assumed that Defendants sought to satisfy the 'customer' requirements of FINRA Rule 12200(2) as the basis for demanding arbitration.").

Even so, applying Abbar's bright-line definition of "customer" to the facts presented here, defendants have not established that they are customers of IBKR. Defendants have not identified any evidence suggesting that they "purchase[d] a good or service" from IBKR or an associated person of IBKR, Abbar, 761 F.3d at 275, and defendants do not claim to have maintained brokerage accounts with IBKR. Compl ¶ 7; see generally Defs. Opp.; Statement of Claim.

The Court therefore finds that defendants have not established themselves as customers of IBKR or an associated person of IBKR for purposes of FINRA Rule 12200.  Because defendants fail to satisfy prong two of Rule 12200, there is no need for the Court to address whether defendants have a basis to compel arbitration based on the alleged existence of a written agreement requiring arbitration pursuant to the FINRA Code.  Accordingly, defendants also cannot compel IBKR to arbitrate under Rule 12200.

## CONCLUSION

Accordingly, for the reasons stated above, plaintiff has established a likelihood of success on the merits and plaintiff's motion for preliminary injunction, ECF No. 5, is granted.  The Clerk of the Court is respectfully directed to close the motions pending at ECF No. 5.


**SO ORDERED.**


Dated:    New York, New York
          October 13, 2023

                              _____
                              NAOMI REICE BUCHWALD
                              UNITED STATES DISTRICT JUDGE

-18-